No. 23-5293

---

## UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

---

ALLAN M. JOSEPHSON,

Plaintiff-Appellee,

v.

TONI M. GANZEL, in her official and individual capacities; KIMBERLY A. BOLAND, in her official and individual capacities; CHARLES R. WOODS, in his official and individual capacities; JENNIFER F. LE, in her official and individual capacities; BRYAN D. CARTER, in his official and individual capacities; WILLIAM D. LOHR, in his official and individual capacities,

Defendants-Appellants.

---

On Appeal from the United States District Court
for the Western District of Kentucky
Case No. 3:19-cv-00230-RGJ-CHL
The Honorable Rebecca Grady Jennings

---

## Motion to Dismiss Defendants-Appellants' Appeal for Lack of Jurisdiction

---

David A. Cortman
Travis C. Barham
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Road N.E.,
  Ste. D-1100
Lawrenceville, Georgia 30043
Telephone: (770) 339–0774

John J. Bursch
ALLIANCE DEFENDING FREEDOM
440 First Street, NW, Ste. 600
Washington, D.C. 20001
Telephone: (202) 393–8690

Kristen K. Waggoner
Tyson C. Langhofer
ALLIANCE DEFENDING FREEDOM
44180 Riverside Parkway
Lansdowne, Virginia 20176
Telephone: (571) 707–4655
tlanghofer@ADFlegal.org

*Attorneys for Plaintiff-Appellee*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................................ii

INTRODUCTION ............................................................................................ 1

BACKGROUND .............................................................................................. 2

ARGUMENT .................................................................................................. 5

I.   This Court lacks jurisdiction over Defendants' fact-based
     qualified immunity arguments. .................................................. 5

     A.   Defendants' qualified immunity arguments are fact-
          based, thus depriving this Court of jurisdiction. .............. 5

     B.   Defendants' qualified immunity arguments fail to take
          the facts in the light most favorable to Dr. Josephson,
          thus depriving this Court of jurisdiction. ...................... 10

II.  This Court should dismiss Defendants' sovereign immunity
     arguments that ignore decades of well-established,
     straightforward Eleventh Amendment law .............................. 14

CONCLUSION .............................................................................................. 15

RULE 27(D) CERTIFICATE OF COMPLIANCE ............................................... 17

CERTIFICATE OF SERVICE .......................................................................... 18

# TABLE OF AUTHORITIES

## CASES

*Adams v. Blount County,*
  946 F.3d 940 (6th Cir. 2020) ...................................................... 8, 10

*Behrens v. Pelletier,*
  516 U.S. 299 (1996) ................................................................ 9, 15

*Berryman v. Rieger,*
  150 F.3d 561 (6th Cir. 1998) ..............................................5, 9, 13, 15

*Bomar v. City of Pontiac,*
  643 F.3d 458 (6th Cir. 2011) ........................................................ 12

*Bunkley v. City of Detroit,*
  902 F.3d 552 (6th Cir. 2018) ......................................................... 8

*Carten v. Kent State University,*
  282 F.3d 391 (6th Cir. 2002) ........................................................ 15

*Ex parte Young,*
  209 U.S. 123 (1908) .................................................................. 4

*Gillispie v. Miami Township,*
  18 F.4th 909 (6th Cir. 2021).........................1, 5, 6, 8, 10, 12, 13, 15

*Hardy v. Jefferson Community College,*
  260 F.3d 671 (6th Cir. 2001) ................................................. 4, 6, 12

*Hoover v. Radabaugh,*
  307 F.3d 460 (6th Cir. 2002) ......................................................... 9

*Howlett v. City of Warren,*
  852 F. App'x 899 (6th Cir. 2021).............................................. 13, 15

*Johnson v. Jones,*
  515 U.S. 304 (1995) ................................................................ 8, 9

*League of Women Voters v. Bruner,*
  548 F.3d 463 (6th Cir. 2008) ..................................................... 4, 14

*McDonald v. Flake,*
  814 F.3d 804 (6th Cir. 2016) ................................................8, 13, 15

*Meriwether v. Hartop,*
    992 F.3d 492 (6th Cir. 2021) ........................................................... 6

*Mitchell v. Forsyth,*
    472 U.S. 511 (1985) .................................................................... 5

*Moldowan v. City of Warren,*
    578 F.3d 351 (6th Cir. 2009) ........................................................... 5

*Ortiz v. Jordan,*
    562 U.S. 180 (2011) .................................................................... 8

*Ouza v. City of Dearborn Heights,*
    969 F.3d 265 (6th Cir. 2020) .................................................... 10, 12

*Puskas v. Delaware County,*
    56 F.4th 1088 (6th Cir. 2023) ......................................................... 12

*Shreve v. Franklin County,*
    743 F.3d 126 (6th Cir. 2014) .......................................................... 12

*Turker v. Ohio Department of Rehabilitation & Corrections,*
    157 F.3d 453 (6th Cir. 1998) .......................................................... 15

*Williams v. Kentucky,*
    24 F.3d 1526 (6th Cir. 1994) ........................................................... 6

*Yates v. City of Cleveland,*
    941 F.2d 444 (6th Cir. 1991) .......................................................... 13

## INTRODUCTION

Over four years ago, Dr. Josephson filed suit because Defendants-Appellants, all University of Louisville officials, retaliated against him for exercising his First Amendment rights. He had a stellar career, having turned around the University's Division of Child and Adolescent Psychiatry and Psychology and led it for almost 15 years. Then, in the fall of 2017, a few people (some activists and faculty) learned that he, speaking for himself and off campus, had expressed concerns about the way some medical professionals treated gender dysphoria in children. This became an inflection point in his 40-year career. Within weeks, he was demoted. For the next year, he was harassed. Ultimately, he was terminated.

Defendants chose not to raise qualified immunity for more than two and a half years while this case wound its way through discovery. They only did so when they filed *six* summary judgment motions, which the district court denied after finding that Defendants' motives for harassing and terminating Dr. Josephson remain entirely in dispute.

Defendants now appeal the denial of qualified immunity. But in doing so, they try to relitigate facts the district court found were in dispute, relying only on the allegations that favor them. That's a problem, because Defendants "cannot appeal a denial of a motion for summary judgment based on qualified immunity insofar as that order determines whether or not the pretrial record sets forth a genuine issue of fact for trial." *Gillispie v. Miami Twp.*, 18 F.4th 909, 916 (6th Cir. 2021) (cleaned up). Thus, the appeal should be dismissed for lack of jurisdiction and the case set for trial.

## BACKGROUND

Below, Dr. Josephson sought summary judgment because the evidence showed that Defendants retaliated against him for expressing his views on gender dysphoria in children.[1] For almost 15 years, he led the Division of Child and Adolescent Psychiatry and Psychology, and he did it so superbly that he earned perfect marks on his annual reviews for 2014, 2015, and 2016. In the fall of 2017, he participated—on his own time, speaking for himself, and over 600 miles from campus—in a panel discussion. There, he expressed his reservations about how some medical professionals treated gender dysphoria in children without adequately exploring background psychological issues. A handful of people on campus—some from the LGBT Center, some from his division—insisted that the University discipline him because they disagreed with his views.

These demands intensified when they learned Dr. Josephson had expressed similar views in expert testimony in a federal case in Florida, views the *en banc* Eleventh Circuit later affirmed.[2] Defendant Ganzel (the medical school dean) told Defendant Woods (Dr. Josephson's chair) and others that Dr. Josephson's views were contrary to "the culture we are trying so hard to promote."[3] Within weeks, Defendant Woods demoted him because some faculty disagreed with his views on gender dysphoria.[4]

---

[1]   *See* Pl.'s Br. in Supp. of Mot. for Summ. J. ("Pl.'s Br."), R. 64-1, Page ID ## 1799–1822; Pl.'s Consol. Br. in Opp'n to Defs.' Mots. for Summ. J. ("Pl.'s Resp."), R. 72, Page ID ## 4571–4604.

[2]   Pl.'s Notice of Suppl. Authority, R. 97, Page ID ## 5689–5746.

[3]   Pl.'s Br., R. 64-1, Page ID # 1805; Pl.'s Resp., R. 72, Page ID # 4573.

[4]   Pl.'s Br., R. 64-1, Page ID ## 1807–08; Pl.'s Resp., R. 72, Page ID ## 4581–83.

Before the demotion and after, each Defendant participated in creating a hostile work environment for Dr. Josephson, by ostracizing him, by imposing unique restrictions on him and depriving him of teaching duties, by soliciting and collecting complaints they never investigated, and by refusing to investigate his well-grounded allegations of misconduct towards him.[5] As Defendant Carter urged the others at the time, they needed to generate "strong documentation" to "avoid Allan's reappointment."[6] And as Defendant Boland responded, Defendant Ganzel was "supportive of what we and you are doing."[7] Their efforts culminated in Dr. Josephson's termination.

Defendants filed six summary judgment motions, with 132 pages of briefing, to say the facts were undisputed. They sidestepped controlling law and insisted that each official lacked the authority or the motive to retaliate against Dr. Josephson, contradicting their own emails, documents, and testimony. As the parties' "characterizations of those documents could not be further apart," the district court denied all motions.[8]

Defendants appeal the denial of qualified immunity based on their disagreement with the district court's determination that the facts are disputed, and Defendants presented their arguments below by construing all such facts in their favor, contrary to the standard the district court

---

[5]  Pl.'s Br., R. 64-1, Page ID ## 1808–20, 1828–33; Pl.'s Resp., R. 72, Page ID ## 4583–95, 4599–4602, 4611–22; Pl.'s List of Def.'s Harassing & Retaliatory Actions ("Pl.'s List"), R. 94-1, Page ID ## 5612–27.

[6]  Pl.'s Br., R. 64-1, Page ID # 1818 & n.225.

[7]  Pl.'s Br., R. 64-1, Page ID # 1818 & n.226.

[8]  Mem. Op. & Order ("Order"), R. 99, Page ID # 5768.

used and this Court will use on appeal. This Court has consistently held that such fact-based arguments are improper for interlocutory appeals.

For example, in 2001, this Court rejected identical qualified immunity arguments, in a case Defendants studiously ignored below. It concerned a district court's denial of qualified immunity in a case about a professor who likewise endured First Amendment retaliation. *Hardy v. Jefferson Cmty. Coll.*, 260 F.3d 671, 682–83 (6th Cir. 2001). The defendants argued no clearly established law barred them from acting on "pedagogical interests." *Id.* at 683. The professor argued that "it was purely his classroom speech that motivated the employment decision." *Id.* This Court rejected defendants' "attempt[] to transform these factual issues into the legal question of objective reasonableness." *Id.* This factual dispute was "inappropriate for consideration on interlocutory appeal." *Id.* This appeal fares no better.

Defendants also appeal the denial of Eleventh Amendment immunity. But for over a century, it has been clear that Dr. Josephson can seek prospective equitable relief (*i.e.*, reinstatement) from Defendants in their official capacities. *See Ex parte Young*, 209 U.S. 123 (1908). In fact, it is so clear that similar appeals have been certified frivolous. *See, e.g.*, *League of Women Voters v. Bruner*, 548 F.3d 463, 474 (6th Cir. 2008).

Thus, Dr. Josephson respectfully requests that this Court dismiss Defendants' interlocutory appeal and allow his case to proceed to trial.

A<span style="font-variant:small-caps">RGUMENT</span>

## I.  This Court lacks jurisdiction over Defendants' fact-based qualified immunity arguments.

### A.  Defendants' qualified immunity arguments are fact-based, thus depriving this Court of jurisdiction.

After the district court denied qualified immunity on summary judgment, this Court's "jurisdiction to hear an interlocutory appeal of that ruling is narrow." *Berryman v. Rieger*, 150 F.3d 561, 562 (6th Cir. 1998). It has jurisdiction only "to the extent that it turns on an issue of law." *Gillispie*, 18 F.4th at 915 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)). At this juncture, this Court is limited to "resolving pure questions of law." *Moldowan v. City of Warren*, 578 F.3d 351, 369 (6th Cir. 2009). Once Defendants "drift from the purely legal into the factual realm and begin contesting what really happened," this Court's "jurisdiction ends and the case should proceed to trial." *Berryman*, 150 F.3d at 564.

In other words, interlocutory appeals about qualified immunity are "meant only to facilitate review of the purely legal question of whether the norms allegedly violated by the defendant were clearly established at the time of the challenged actions." *Gillispie*, 18 F.4th 916 (cleaned up). "That is the precise scope and outer boundary of appellate jurisdiction in this context." *Id.* (cleaned up). Defendants' appeal exceeds these limits.

Below, Defendants never once identified a legal standard that they believed was unclear. The closest they came was when some claimed that the presence of a balancing test rendered the law unclear, citing a 1994

5

decision.[9] But even in that case, this Court denied qualified immunity, ruling that the law surrounding First Amendment retaliation was clearly established. *Williams v. Kentucky*, 24 F.3d 1526, 1537 (6th Cir. 1994). What's more, in 2001, this Court ruled that "[f]or decades it has been clearly established that the First Amendment tolerates neither laws or other means of coercion, persuasion, or intimidation 'that cast a pall of orthodoxy' over the free exchange of ideas in the classroom" or on campus. *Hardy*, 260 F.3d at 682. Even accounting for the *Pickering* balancing test, this Court ruled that retaliating against faculty based on protected speech "was, as a matter of law, objectively unreasonable." *Id.* at 683. What was clear in 2001 is clear today. *See Meriwether v. Hartop*, 992 F.3d 492 (6th Cir. 2021) (reaffirming *Hardy*). And this is the only point Defendants made below that comes even remotely close to challenging the law's clarity. Hence, the Court should dismiss this appeal.

Rather than arguing that the law was not clearly established—the only issue over which this Court has jurisdiction at this interlocutory juncture, *Gillispie*, 18 F.4th at 916—Defendants instead challenged the sufficiency of Dr. Josephson's evidence. Defendants Woods and Boland argued that Dr. Josephson did not provide enough evidence that his speech motivated their actions.[10] Defendant Carter and Lohr argued that

---

[9]  *See* Woods Br., R. 58-1, Page ID ## 958–59; Le Br., R. 62-1, Page ID ## 1443–44; Carter Br. R. 59-1, Page ID # 1088; Lohr Br., R. 60-1, Page ID # 1267 n.7 (adopting Carter's arguments); Ganzel Br., R. 61-1, Page ID # 1335.

[10]  Boland Br., R. 63-1, Page ID # 1595 ("Josephson has failed to show that his presentation at the Heritage Foundation or his expert testimony

Dr. Josephson did not show they were sufficiently involved in any adverse actions.[11] Defendants Boland and Le downplayed their roles as merely providing "accurate information" and "recommendation[s]."[12] Defendant Ganzel said she merely "rel[ied] on accurate information" and "accept[ed] [Defendant Boland's] recommendation."[13] These descriptions try (and fail) to masquerade factual disputes as issues of clearly established law, begging questions that the district court ruled turn on disputed facts.

The district court determined Dr. Josephson presented sufficient evidence that Defendants "may have violated his First Amendment rights," summarizing some of the evidence against each.[14] Later, it found that "there are genuine disputes of material facts related to Josephson's

---

played a role in Boland's recommendation to Ganzel."); Woods Br., R. 58-1, Page ID # 958 ("Josephson has failed to show that his presentation at the Heritage Foundation or his expert testimony played any role in Woods' decision to ask him to step down as Division Chief").

[11] Carter Br., R. 59-1, Page ID # 1087 ("Carter was not the individual who made decisions about Josephson stepping down as Division Chief and . . . who decided against renewal of Josephson's faculty appointment."); Lohr Br., R. 60-1, Page ID # 1268 ("Lohr did not take any discrete adverse employment action against Josephson. . . .").

[12] Boland Br., R. 63-1, Page ID # 1596 ("Boland's provision of information . . . and accompanying recommendation"); Le Br., R. 62-1, Page ID # 1444 ("Le's provision of accurate information . . . and support of Dr. Boland's recommendation").

[13] Ganzel Br., R. 61-1, Page ID # 1335 ("Ganzel's decision to rely on accurate information from Dr. Boland to accept her recommendation").

[14] Order, R. 99, Page ID # 5764 ("Ganzel stated that Josephson's speech did not reflect the University's culture and ultimately approved his termination. Woods instructed Josephson to give disclaimers when teaching on matters related to gender dysphoria. Boland recommended Josephson's non-renewal. Le collected complaints against Josephson and included them in a tracking document. Carter also collected complaints for the Josephson tracking document and requested Josephson stop treating LGBTQ patients. Lohr referred to Josephson's opinions about gender dysphoria as 'unscientific.'" (cleaned up)).

claims."[15] Indeed, the district court cited the parties' supplements—
which highlighted the differing accounts of Defendants' motives for their
actions—as "most clearly demonstrat[ing] these disputed facts.[16]

These determinations are outside this Court's jurisdiction on an in-
terlocutory appeal. Defendants "cannot appeal a denial of a motion for
summary judgment based on qualified immunity insofar as that order
determines whether or not the pretrial record sets forth a genuine issue
of fact for trial." *Gillispie*, 18 F.4th at 916 (cleaned up) (quoting *Adams v.
Blount Cnty.*, 946 F.3d 940, 948 (6th Cir. 2020); *Johnson v. Jones*, 515
U.S. 304, 320 (1995)). Nor can they challenge "the district court's deter-
mination of evidence sufficiency, *i.e.*, which facts a party may, or may not,
be able to prove at trial." *Id.* (cleaned up) (quoting *Bunkley v. City of De-
troit*, 902 F.3d 552, 559 (6th Cir. 2018); *Johnson*, 515 U.S. at 313). Spe-
cifically, this off-limits sufficiency category includes questions about
"why an action was taken" and "who did it." *McDonald v. Flake*, 814 F.3d
804, 813 (6th Cir. 2016) (cleaned up) (quoting *Ortiz v. Jordan*, 562 U.S.
180, 190 (2011); *Johnson*, 515 U.S. at 307).

Yet these off-limits "why" and "who" questions are the very ones on
which Defendants hung their qualified immunity hopes below. Indeed,
*Johnson* revolved around claims that the plaintiff could not prove that
the defendant officers "had beaten him or had been present while others

---

[15] *Id.*, Page ID # 5768.
[16] *Id.* (citing R. 94, 96-1); Pl.'s List, R. 94-1, Page ID ## 5614–27.

did so." *Johnson*, 515 U.S. at 307. But the Supreme Court ruled the district court's determination "that the summary judgment record . . . raised a genuine issue of fact concerning petitioners' involvement" in the alleged violation "was not a final decision" and thus not appealable on an interlocutory basis. *Id.* at 313 (cleaned up).

Similarly, this Court ruled that it does "not have jurisdiction to review the factual determination of the district court that there was a genuine issue of material fact as to whether or not the defendants entertained unconstitutional motivations." *Hoover v. Radabaugh*, 307 F.3d 460, 466 (6th Cir. 2002); *id.* at 467 (same); *Berryman*, 150 F.3d at 564–65 (dismissing appeal for lack of jurisdiction as it "boils down to credibility determinations we cannot make" and "contradict[s] [plaintiff's] version of the facts at every turn"). Yet Defendants' arguments below depend on assuming that their motives are as pure as they claim, with their roles being limited at most to merely providing or accepting information.[17]

In short, there is no "abstract issue of law relating to qualified immunity" at stake *Berryman*, 150 F.3d at 563 (quoting *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996)). Defendants never identified a single point of law that remains unclear but instead veered into the prohibited territory of challenging the district court's factual findings. This Court's "jurisdiction [should] end[] and the case should proceed to trial." *Id.* at 564.

---

[17] *See supra* notes 10–13.

**B.    Defendants' qualified immunity arguments fail to take the facts in the light most favorable to Dr. Josephson, thus depriving this Court of jurisdiction.**

Furthermore, this Court has "jurisdiction only to the extent that [D]efendant[s] limit[ their] argument to questions of law *premised on facts taken in the light most favorable to [Dr. Josephson]." Gillispie*, 18 F.4th 915 (quoting *Adams*, 946 F.3d at 948) (emphasis added). "If disputed facts are crucial to a defendant's interlocutory qualified immunity appeal"—as they are to Defendants' appeal here—this Court "may not simply ignore such disputes"; it is "obliged to dismiss the appeal for lack of jurisdiction." *Id.* at 916 (quoting *Adams*, 946 F.3d at 951) (cleaned up). This Court has "consistently enforced [this] jurisdictional bar in cases in which the defendant's qualified immunity appeal is based solely on his or her disagreement with the plaintiff's facts." *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 277 (6th Cir. 2020) (collecting cases).

Defendants' qualified immunity arguments below failed to take the facts in the light most favorable to Dr. Josephson. For example, Defendant Ganzel claimed qualified immunity protected her for merely accepting information and recommendations.[18] Yet Dr. Josephson presented evidence that she immediately opposed his viewpoints, that she supported the campaign of other Defendants to gather "strong documentation" in order "to avoid Allan's reappointment," and that she terminated him.[19]

---

[18]  Ganzel Br., R. 61-1, Page ID # 1335 ("Ganzel's decision to rely on accurate information from Dr. Boland to accept her recommendation").

[19]  Pl.'s Br., R. 64-1, Page ID ## 1803–05, 1808, 1818, 1829, 1835–36; Pl.'s Resp., R. 72, Page ID ## 4573–78, 4585–86, 4588, 4592–95, 4616–17; Pl.'s List, R. 94-1, Page ID # 5614.

Defendant Woods claims Dr. Josephson failed to show that his speech motivated the demotion.[20] Actually, Dr. Josephson did provide this evidence, including from Defendant Woods' own letter.[21] In addition, he showed that Defendant Woods participated in creating the hostile environment that led to his termination, evidence Defendants ignore.[22]

Defendant Boland makes similar claims.[23] Yet Dr. Josephson detailed how she contributed to the demotion, hostile environment, and termination. She praised Defendants Le, Lohr, and Carter for their "sleuthing," supported their campaign to seek "strong documentation" "to avoid Allan's reappointment," conveyed Defendant Ganzel's support, and recommended terminating Dr. Josephson.[24]

Defendant Le characterizes her role as providing information and recommendations.[25] Defendants Carter and Lohr deny any involvement in any adverse actions.[26] Yet Dr. Josephson painstakingly documented

---

[20]  Woods Br., R. 58-1, Page ID # 958 ("Josephson has failed to show that his presentation at the Heritage Foundation or his expert testimony played any role in Woods' decision to ask him to step down as Division Chief").

[21]  Pl.'s Br., R. 64-1, Page ID ## 1807–08; Pl.'s Resp., R. 72, Page ID ## 4581–83.

[22]  Pl.'s Br., R. 64-1, Page ID ## 1807–15, 1829–39; Pl.'s Resp., R. 72, Page ID ## 4583–88, 4593–94, 4617–19; Pl.'s List, R. 94-1, Page ID ## 5615–16.

[23]  Boland Br., R. 63-1, Page ID ## 1595–96 ("Josephson has failed to show that his presentation at the Heritage Foundation or his expert testimony played a role in Boland's recommendation to Ganzel. . . . Boland's provision of information . . . and accompanying recommendation").

[24]  Pl.'s Br., R. 64-1, Page ID ## 1816, 1818–22, 1836; Pl.'s Resp., R. 72, Page ID ## 4582–87, 4601–02, 4619–20; Pl.'s List, R. 94-1, Page ID ## 5617–18.

[25]  Le Br., R. 62-1, Page ID # 1444 ("Le's provision of accurate information . . . and support of Dr. Boland's recommendation").

[26]  Carter Br., R. 59-1, Page ID # 1087 ("Carter was not the individual who made decisions about Josephson stepping down as Division Chief

how each contributed to his demotion, created the hostile environment, and played a role in his termination.[27]

"This repeated refusal to accept [Dr. Josephson's] version of the facts is fatal to [Defendants'] appeal." *Gillispie*, 18 F.4th at 918. For one thing, the district court correctly viewed the evidence in the light most favorable to Dr. Josephson.[28] *E.g.*, *Puskas v. Delaware Cnty.*, 56 F.4th 1088, 1093 (6th Cir. 2023) (assessing qualified immunity on summary judgment based on "the facts, when viewed in the light most favorable to the plaintiff"). For another, in this interlocutory setting, "the factual inquiry itself is even more friendly to [Dr. Josephson] in that [this Court is] without power to review—*de novo*, or under any other standard—the district court's determination that there exist triable issues of fact." *Bomar v. City of Pontiac*, 643 F.3d 458, 462 n.8 (6th Cir. 2011). "Indeed, the precise scope of [this Court's] appellate jurisdiction on interlocutory appeal from a denial of qualified immunity is whether 'the plaintiff's version of facts demonstrates a violation of clearly established rights.'" *Ouza*, 969 F.3d at 277–78. Ignoring this "precise scope" condemned the defendants' qualified immunity arguments in *Hardy*, 260 F.3d at 683; it should here as well. This appeal should be dismissed for lack of jurisdiction.

---

and . . . who decided against renewal of Josephson's faculty appointment."); Lohr Br., R. 60-1, Page ID # 1268 ("Lohr did not take any discrete adverse employment action against Josephson. . . .").

[27] Pl.'s Br., R. 64-1, Page ID ## 1805–22, 1829–39; Pl.'s Resp., R. 72, Page ID ## 4572–95, 4599–4602, 4620–22; Pl.'s List, R. 94-1, Page ID ## 5619–27.

[28] Order, R. 99, Page ID ## 5762, 5765 (citing *Shreve v. Franklin Cnty.*, 743 F.3d 126, 134 (6th Cir. 2014)).

\* \* \*

The jurisdictional principles here—the need to identify an abstract issue of law and to view the facts in the light most favorable to Dr. Josephson—are not new. *Gillispie*, 18 F.4th at 919 ("*Johnson* was published more than 26 years ago, and litigants have been on notice for more than two decades that fact-intensive claims of entitlement to qualified immunity can consume inordinate amounts of appellate time." (cleaned up)). Thus, this Court has dubbed appeals that ignore these principles "frivolous," *Howlett v. City of Warren*, 852 F. App'x 899, 902 (6th Cir. 2021), and has even imposed sanctions to prevent defendants from "unnecessarily protracting litigation" and "wast[ing] judicial resources." *Gillispie*, 18 F.4th at 919; *accord McDonald*, 814 F.3d at 816–17 (finding fact-based interlocutory qualified immunity appeal to be "obviously without merit" and imposing sanctions); *Howlett*, 852 F. App'x at 902 (issuing show cause order); *Berryman*, 150 F.3d at 564–65 (noting court "should consider imposing" sanctions of "double costs and attorney's fees" when it appears "defendant is unnecessarily protracting the litigation").

Dr. Josephson is not seeking sanctions now. He merely wants his case to proceed to trial, recognizing that "[d]uring the appeal memories fade," "judges' schedules become chaotic," and his "entitlements may be lost or undermined." *Yates v. City of Cleveland*, 941 F.2d 444, 448 (6th Cir. 1991). Thus, he requests that Defendants' appeal be dismissed.

## II. This Court should dismiss Defendants' sovereign immunity arguments that ignore decades of well-established, straightforward Eleventh Amendment law.

Defendants also appeal the district court's rejection of their Eleventh Amendment claim. Yet, this is an issue that courts have even "certified" as "frivolous." *League of Women Voters*, 548 F.3d at 474.

On this point, Defendant Le insists that Dr. Josephson cannot seek damages from her in her official capacities.[29] He is not.[30] Others admit that *Ex parte Young* allows Dr. Josephson to seek prospective injunctive and declaratory relief from them in their official capacities, but bluntly assert that "there is no ongoing violation of federal law, and the suit primarily seeks damages, not prospective relief."[31] But the test isn't "primarily seeks." The "straightforward" test is whether the "complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *League of Women Voters*, 548 F.3d at 474.

Here, the complaint alleges that the "decisions that led to the violation of Dr. Josephson's constitutional rights remain in full force and effect" and that he "is suffering irreparable harm from [them]."[32] It also seeks injunctive and declaratory relief in Defendants' official capacities.[33] This Court has long held that such "claims for reinstatement are prospective in nature and appropriate subjects for *Ex parte Young* actions."

---

[29] Le Br., R. 62-1, Page ID # 1444.

[30] Order, R. 99, Page ID # 5761 (noting in Eleventh Amendment analysis that "Josephson seeks declaratory and injunctive relief").

[31] Carter Br., R. 59-1, Page ID # 1090; Ganzel Br., R. 61-1, Page ID # 1337; Lohr Br., R. 60-1, Page ID # 1270.

[32] Am. Compl., R. 19, Page ID # 248.

[33] Am. Compl., R. 19, Page ID # 254.

14

*Carten v. Kent State Univ.*, 282 F.3d 391, 396 (6th Cir. 2002) (citing *Turker v. Ohio Dep't of Rehab. & Corrs.*, 157 F.3d 453, 459 (6th Cir. 1998)). Hence, Defendants' appeal of this issue should also be dismissed.

## CONCLUSION

To be sure, this Court seldom entertains motions to dismiss, usually consolidating such motions with a panel's consideration of an appeal's merits. But here, Defendants' qualified immunity arguments below fall so far short of what is required to invoke this Court's interlocutory jurisdiction that they demand dismissal immediately. Defendants failed to identify an "abstract issue of law relating to qualified immunity." *Berryman*, 150 F.3d at 563 (quoting *Behrens*, 516 U.S. at 313). Instead, Defendants contested the facts and never addressed those facts in the light most favorable to Dr. Josephson—a "fatal" error. *Gillispie*, 18 F.4th at 918. And they advanced arguments that courts have declared "frivolous" and "obviously without merit." *McDonald*, 814 F.3d at 816–17; *Howlett*, 852 F. App'x at 902. Accordingly, this Court's "jurisdiction [should] end[] and the case should proceed to trial." *Berryman*, 150 F.3d at 564. Dr. Josephson's motion to dismiss this appeal should be granted.

Respectfully submitted this 17th day of May, 2023.

/s/ Tyson C. Langhofer

David A. Cortman
Travis C. Barham
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Road N.E.,
    Ste. D-1100
Lawrenceville, Georgia 30043
Telephone: (770) 339–0774
Facsimile: (770) 339–6744
dcortman@ADFlegal.org
tbarham@ADFlegal.org

Kristen K. Waggoner
Tyson C. Langhofer
ALLIANCE DEFENDING FREEDOM
44180 Riverside Parkway
Lansdowne, Virginia 20176
Telephone: (571) 707–4655
Facsimile: (571) 707–4656
kwaggoner@ADFlegal.org
tlanghofer@ADFlegal.org

John J. Bursch
Alliance Defending Freedom
440 First Street NW, Ste. 600
Washington, DC 20001
Telephone: (202) 393–8690
Facsimile: (202) 347–3622
jbursch@ADFlegal.org

*Attorneys for Plaintiff-Appellee*

## RULE 27(D) CERTIFICATE OF COMPLIANCE

1.    This document complies with the type-volume limit of FED. R. APP. P. 27(d)(2)(A) because, excluding the parts of the document exempted by FED. R. APP. P. 27(a)(2)(B) and 32 (f), as well as 6th Cir. R. 32(b), this document contains 4,032 words according to the word count function of Microsoft Word 365.

2.    Consistent with Fed. R. App. P. 27(d)(1)(E), this document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point Century Schoolbook font.

*/s/ Tyson C. Langhofer*
Tyson C. Langhofer
ALLIANCE DEFENDING FREEDOM
44180 Riverside Parkway
Lansdowne, Virginia 20176
Telephone: (571) 707–4655
Facsimile: (571) 707–4656
tlanghofer@ADFlegal.org

*Attorney for Plaintiff-Appellee*

Date: May 17, 2023

**CERTIFICATE OF SERVICE**

Under 6th Cir. R. 27, I hereby certify that on May 17, 2023, a digital copy of the foregoing document was filed electronically with the Court using its electronic filing system, which automatically sends an electronic notification to all attorneys of record.

*/s/ Tyson C. Langhofer*

Tyson C. Langhofer
ALLIANCE DEFENDING FREEDOM
44180 Riverside Parkway
Lansdowne, Virginia 20176
Telephone: (571) 707–4655
Facsimile: (571) 707–4656
tlanghofer@ADFlegal.org

*Attorney for Plaintiff-Appellee*

Date: May 17, 2023